[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  12-15518
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cv-00362-WKW-TFM


KB, et al,

                                                  Plaintiff-Appellant,

versus

DALEVILLE CITY BOARD OF ED,

                                                  Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 30, 2013)

Before MARTIN, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

      ES brought this action on behalf of her daughter, KB, against the Daleville

City Board of Education, alleging that KB was sexually harassed by the school

custodian, Alan Moody.  The district court granted summary judgment on ES' only

remaining claim, which was based on Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq.* ES now appeals, asserting that genuine issues of material fact remain in dispute, and that summary judgment is therefore improper.

ES presented evidence that in 2009 Mr. Moody intentionally placed his entire hand upon KB's buttocks in the school cafeteria, and that Mr. Moody, after being instructed to avoid contact with KB, violated that command by entering the lunchroom during her lunch hour. At the summary judgment stage of proceedings, we accept these facts and draw all reasonable inferences in the light most favorable to ES. Nevertheless, because we conclude that a reasonable jury could not find that the School Board acted with deliberate indifference to actual notice of sexual harassment, as required under Title IX, we affirm.

## I.  STANDARD OF REVIEW

We review *de novo* the grant of summary judgment, applying the same legal standards used by the district court. *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1253 (11th Cir.2010). These legal standards require that we view the facts, and resolve all reasonable inferences, in favor of the non-moving party. *See Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1280-81 (11th Cir.2003). Summary judgment should only be granted if the record reveals that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*

## II.  DISCUSSION

### A.  The School Board's Liability under Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Supreme Court has recognized an implied right of action for monetary damages under Title IX for claims involving intentional sexual discrimination, and has held that a teacher's sexual harassment of a student is actionable as discrimination under Title IX.  *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 502 U.S. 60, 75-76 (1992).  In cases of sexual harassment of a student by a teacher, our inquiry is governed by *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

In *Gebser*, the Supreme Court made it clear that school district liability for violations of Title IX will not lie in all cases of teacher-on-student sexual harassment.  "Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation."  *Id.* at 290 (citing 20 U.S.C. § 1682). Therefore, the Court explained, school districts cannot be held liable on a theory of *respondeat superior* or even constructive notice.  *Id.* at 285.  Title IX liability only arises where "an official of the school district who at minimum has authority to

3

institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 290.

Under *Gebser*, a Title IX plaintiff must identify a school district official with the authority to take corrective measures in response to actual notice of sexual harassment. *See Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir.1999). The actual notice must be sufficient to alert that official to the possibility of the plaintiff's sexual harassment. *See Gebser*, 524 U.S. at 291. And, that official must respond with deliberate indifference. *See Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir.2005).

## B. The Employee/Student Victim Distinction

In applying the *Gebser* framework to ES' Title IX claim, the district court noted the following:

> With one exception, all of Mr. Moody's prior incidents of harassment were directed at other employees, not students. While such a history, if proven, could suggest Mr. Moody might harass an adult coworker, ES has not explained why it should have put the School Board on notice that Mr. Moody was a danger to *students*.

Doc. # 44 at 6 (emphasis in original). The district court went on to hold that "Mr. Moody's history of harassing coworkers is insufficient to meet the actual-notice requirement of ES' Title IX claim." *Id.* In support of its holding, the district court cited *Hackett v. Fulton County Sch. Dist.*, 238 F. Supp. 2d 1330 (N.D. Ga. 2002), a case which states, in pertinent part, as follows:

4

> [E]ven if the evidence could not be construed as placing the school district on notice that there was a peculiar relationship between Kriel [the teacher] and Green [another teacher], a teacher's harassment of another teacher can not be considered sufficient to put the principal on notice that the teacher may be committing sexual misconduct against *students*. *Cf. Gebser*, 524 U.S. at 291, 118 S.Ct. 1989 (the principal's notice of a teacher's sexually suggestive comments to students in class does not equate to notice that the teacher might be sexually molesting a student).

*Id.* at 1349-50 (emphasis in original). Relying on *Hackett*, the district court declined to consider many of Mr. Moody's past instances of sexual harassment which, according to ES, provided the School Board with actual notice of the possibility of Mr. Moody's later sexual assault of KB. The only prior complaints of sexual harassment the district court considered in its actual notice inquiry were the numerous reports of sexual leering against Mr. Moody over a period of a few years immediately preceding his alleged sexual assault of KB.

We need not decide whether the district court's notice rationale was sound. Even if we consider the matters the district court excluded from its analysis, there is insufficient evidence to create an issue of fact as to the issue of actual notice. To explain why, we describe these past instances of Mr. Moody's misconduct in detail.

### B. The First Complaint (1996) Against Mr. Moody - Kathy Davis

In 1996, Kathy Davis, a teacher, and Mr. Moody, a custodian, worked together at Windham Elementary, a Daleville City school. Within her first year at

Windham Elementary, Mr. Moody allegedly touched Ms. Davis' buttocks three to five times. Ms. Davis reported these incidents of sexual harassment at a single meeting with Principal Julia Fulford. During their meeting, Ms. Davis said that she initially believed the contact may have been accidental but, as the number of incidents multiplied, she began to suspect something more sinister. Principal Fulford asked Ms. Davis if she wanted to file a formal complaint, and Ms. Davis indicated that she did not. She simply wanted the problem eliminated.

Other than Mr. Moody and Ms. Davis, there were no witnesses. Immediately upon hearing that the alleged acts of sexual harassment/assault took place while Mr. Moody and Ms. Davis were alone, Principle Fulford located Mr. Moody and informed him that he was forbidden from entering Ms. Davis' classroom without others present. Principal Fulford then made a written record of the incident, placing a report in her office personnel file for further review should another report of similar behavior surface in the future. Principal Fulford never received another complaint regarding Mr. Moody for the remainder of her six-year tenure as principal of Windham Elementary.

We first must consider whether Principal Fulford is an "appropriate person" who "at minimum has authority to institute corrective measures on the district's behalf." *Gebser*, 524 U.S. at 290. "The ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles vary among

6

school districts." *Doe*, 604 F.3d at 1256. (internal quotation marks omitted). Like the majority of our sister circuits, we have not hesitated in concluding that principals, as the highest ranking school officials present at schools every day, are "high enough on the chain of command to impute liability to the School Board." *Id.* at 1255. (internal quotation marks omitted). Principal Fulford is an "appropriate person" under Title IX.

We next address whether Principal Fulford had actual notice of the possibility that Mr. Moody might sexually harass a student like KB in the future. Mr. Moody allegedly touched the buttocks of Ms. Davis, and also allegedly touched the buttocks of KB. Each time he claimed his actions were inadvertent. Each time the victim's focus was elsewhere. And each time the identical act of sexual harassment occurred in a location where no other witnesses were present. These events are strikingly similar in nature and setting. The only difference appears to be the age of the victim, which alone does not preclude a finding of actual notice. A reasonable jury could find, we think, that Principal Fulford had actual notice.

Finally, we decide whether there is sufficient evidence that Principal Fulford acted with deliberate indifference to Mr. Moody's misconduct to create a jury issue. "Deliberate indifference is an exacting standard." *Doe*, 604 F.3d at 1259. School district officials will only be found deliberately indifferent when their

7

"response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 648 (1999). As the incidents reported by Ms. Davis constituted the universe of known circumstances with regard to Principal Fulford, we find that her response was not clearly unreasonable.

Principal Fulford made time to hear from Ms. Davis as soon as she was ready to report Mr. Moody's alleged misconduct, offered to help her file a formal complaint, and immediately told Mr. Moody that he was forbidden from entering Ms. Davis' classroom unless others were present. Principal Fulford's response was immediate, tailored, and effective. She fashioned a solution to eliminate Mr. Moody's inappropriate advances, while respecting Ms. Davis' desire to resolve the issue privately. Never again did Principal Fulford receive a complaint concerning Mr. Moody. But in case she did, Principal Fulford dutifully recorded the substance of Ms. Davis' complaint and placed the record in her personal file for further reference if required in the future. Any omission in Principal Fulford's response "cannot be said to represent a decision by the school board not to remedy the violation," *Doe*, 604 F.3d at 1260 (internal quotation marks omitted), and no reasonable jury could find otherwise. Thus, the first reported instance of sexual harassment does not provide a basis for holding Daleville City liable under Title IX.

### C.   The Second Complaint (2006) Against Mr. Moody - Heather Nichols

In 2006, Heather Nichols and Mr. Moody worked together at Windham Elementary School under the supervision of Principal Christopher Mitten. Principal Fulford, who dealt with the only prior reported allegations of sexual harassment leveled against Mr. Moody, had left years before.

In early March of 2006, Ms. Nichols notified Principal Mitten by email that Mr. Moody had inappropriately touched her buttocks on two prior occasions. Mr. Moody denied any wrongdoing. Principal Mitten spoke with Ms. Nichols immediately thereafter to confirm the allegations in her email and asked whether any witnesses were present at either of the alleged incidents. Ms. Nichols informed him that Becky Calhoun was in the room when Mr. Moody touched her the second time. Principal Mitten thanked Ms. Nichols for her time, instructed her that the allegations would be thoroughly investigated, and sought out Ms. Calhoun.

Principal Mitten asked Ms. Calhoun if she had observed the incident of alleged sexual harassment reported by Ms. Nichols. She indicated that she had not, but that Ms. Nichols informed her of the incident immediately thereafter. Principal Mitten told Ms. Calhoun that all information pertaining to the incident and investigation was confidential and thanked her for her assistance. He then contacted his supervisor, Superintendent Andrew Kelley, to verify the policies and procedures to be followed given Ms. Nichols' allegations.

9

After conferring with Superintendent Kelley, Principal Mitten told Ms. Nichols that her allegations were being taken seriously and that, in order to aid the investigation, her recollections of the incident needed to be reduced to writing and submitted to the central office. Ms. Nichols did as she was asked, submitting a written complaint to Principal Mitten, who in turn delivered it to Superintendent Kelley. Finally, Principal Mitten drafted a letter memorializing the incident and his actions in response thereto.

### i. Principal Mitten

Principal Mitten had actual notice of the possibility that Mr. Moody would sexually harass another teacher or a student like KB. Ms. Nichols reported two occasions of sexual harassment involving the inappropriate touching of her buttocks. She did so first by email and later during a meeting initiated by Principal Mitten. Principal Mitten was therefore well-aware of the detailed allegations of sexual harassment leveled by Ms. Nichols, and is an appropriate person under Title IX.

Though Principal Mitten is an appropriate person who had actual notice of the possibility of Mr. Moody's act of sexual harassment against KB, he did not act with deliberate indifference in the face of this known risk. As soon as Principal Mitten received Ms. Nichols' e-mail notifying him of the incident, his investigation began. He promptly interviewed both Ms. Nichols and Ms. Calhoun, the two

10

persons most likely to possess information about the incident other than the alleged perpetrator, and sought counsel from his own supervisor. Finally, he recommended that Ms. Nichols put her allegations to writing in order to file a formal complaint, and delivered her complaint to the superintendent's office himself.

School district officials are deliberately indifferent under Title IX when their "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. We cannot say that Principal Mitten's response to Ms. Nichols' allegations of sexual harassment was clearly unreasonable. Thus, the school district cannot be held liable under Title IX based upon his conduct. *See Gebser*, 524 U.S. at 290.

### ii. Superintendent Kelley

Superintendent Kelley also had actual notice of the possibility of KB's sexual harassment. Principal Mitten and Ms. Nichols both informed Superintendent Kelley of Ms. Nichols' allegations against Mr. Moody. Like Principal Mitten, Superintendent Kelley is an appropriate person under Title IX.

The "known circumstances," as far as Superintendent Kelley was concerned, consisted of the formal complaint by Ms. Nichols outlining her allegations that Mr. Moody had twice inappropriately touched her buttocks. *Davis*, 526 U.S. at 648. Superintendent Kelley did not have actual knowledge of Ms. Davis' earlier

allegations against Mr. Moody, which had been reported to a different principal more than a decade earlier. We have made clear before, and reiterate today, that the relevant response must be judged in relation only to the *known* circumstances.

Superintendent Kelley's actions in response to the information received from Principal Mitten and Ms. Nichols were not "clearly unreasonable in light of known circumstances," and thus, did not exhibit deliberate indifference. *Id.* To begin with, Mr. Moody denied all wrongdoing. He claimed that any contact between he and Ms. Nichols was inadvertent. And, to make matters more difficult, there were no witnesses to confirm or deny Ms. Nichols' allegations, making it a classic case of "she said, he said." With nothing to corroborate either side of the story and no known history of sexual harassment, Superintendent Kelley's actions in response to this single set of allegations were appropriately tailored.

Superintendent Kelley reviewed Principal Mitten's investigatory report, considered Ms. Nichols' formal complaint, consulted the School Board's legal counsel, and promptly contacted Mr. Moody. By written correspondence, Superintendent Kelley notified Mr. Moody of the allegations against him, instructed him to carefully coordinate his movements when in close proximity with others, and provided him a copy of the School District's sexual harassment policy. Superintendent Kelley not only hand delivered his letter to Mr. Moody, but read it aloud to him, and further instructed him to avoid contact with Ms. Nichols. In

addition, Superintendent Kelley kept Ms. Nichols informed throughout the process. We cannot say that Superintendent Kelley's response to this single set of uncorroborated allegations against an employee with no known history of sexual harassment (as far as Superintendent Kelley was concerned) was clearly unreasonable, nor could any reasonable jury. The School Board cannot be held liable under Title IX based on the actions of Superintendent Kelley.

### D. The Third Complaint Against Mr. Moody - Undressing Looks

Mr. Moody, was later transferred to Daleville Middle School. During Mr. Moody's time at Daleville Middle, ES asserts that a number of individuals complained to Principal McDuffie of "undressing" looks by Mr. Moody. Principal McDuffie acknowledged as much in his deposition and at the arbitration. Principal McDuffie, however, did not have actual knowledge of the prior allegations lodged against Mr. Moody by Ms. Davis and Ms. Nichols.

ES alleges that after students and teachers informed Principal McDuffie of Mr. Moody's improper looks, Mr. Moody inappropriately touched KB's buttocks. The district court found that ES has not submitted sufficient evidence of actual notice or deliberate indifference, and we agree.

Assuming ES could prove that numerous students and teachers notified Principal McDuffie that Mr. Moody was continuously "undressing them with his eyes," this is insufficient to alert Principal McDuffie of the possibility of Mr.

13

Moody's alleged sexual assault of KB.  As the district court noted, both this Court and the Supreme Court have recognized that "some prior allegations of harassment may be sufficiently minimal and far afield from the conduct underlying the plaintiff's Title IX claim that they would not alert a school district official of the risk of a Title IX plaintiff's sexual harassment."  *Doe*, 604 F.3d at 1258 (citing *Gebser*, 524 U.S. at 291).

In *Davis*, for example, we held that "perceived imminent" touching was insufficient to alert school district officials of the potential sexual molestation of the plaintiffs.  *See* 233 F.3d at 1373.  In *Gebser*, the Supreme Court held that a teacher's inappropriate and sexually suggestive comments during class were "plainly insufficient" to alert the principal to the possibility of a sexual relationship between the teacher and a student.  *See* 524 U.S. at 291.  In both cases, the actions and events alleged to have provided school district officials with actual notice of the possibility of sexual assault were more severe in nature and closer in kind to the plaintiff's Title IX claim than here.  Each was arguably a better predictor of the possibility of a future sexual assault than strange looks or prolonged stares, and yet they were deemed insufficient to provide actual notice.  Accordingly, Mr. Moody's "undressing looks" also failed to provide Principal Mitten with actual notice of the possibility that he might commit a sexual assault on a student like KB.

### E. The Fourth Complaint Against Mr. Moody - KB

14

As the district court noted, at the very least, the School Board had actual notice of Mr. Moody sexually harassing/assaulting KB. The School Board's actions in response to this incident, if clearly unreasonable, could constitute deliberate indifference. *See Davis*, 526 U.S. at 648.

KB missed school due to her fear of Mr. Moody and had to live with that lingering fear both at school and in her community. Were the School Board's response to the assault deficient in any way, a reasonable jury could conclude that those deficiencies caused KB's subsequent emotional trauma. *See Doe*, 604 F.3d at 1262. The School Board's response, however, was not clearly unreasonable in light of known circumstances. After reviewing each instance of sexual harassment reported to School Board officials and their actions in response to those reports, we affirm the districts court's grant of summary judgment in its favor.

As the district court explained "the undisputed evidence shows the response to the incident with KB was swift and effective." Doc. 44 at 8. Upon learning of KB's allegations against Mr. Moody, Principal McDuffie immediately restricted his movements. Mr. Moody violated those restrictions, and within one week Superintendent Kelley recommended Mr. Moody's termination. Less than two months later, the School Board fired Mr. Moody.

## II. Conclusion

The district court's grant of summary judgment is affirmed.

15

**AFFIRMED.**

16